# IN THE UNITED STATES DISCTRICT COURT
# EASTERN DISTRICT OF VIRGINIA
(Alexandria Division)

| | |
|---|---|
| **Erik B. Cherdak**<br>149 Thurgood Street<br>Gaithersburg, Maryland 20878<br><br>*Plaintiff,*<br><br>v.<br><br>**NORDSTROM, INC.**<br>1617 Sixth Avenue<br>Seattle, Washington 98101<br><br>*Defendant.* | 2011 FEB 28 P 2: 23<br>CLERK US DISTRICT COURT<br>ALEXANDRIA, VIRGINIA<br>Case No. 1:11CV2-03 LO/TCB<br><br>COMPLAINT FOR<br>PATENT INFRINGEMENT<br><br>JURY TRIAL DEMANDED<br><br>RELATED CASES:<br>1:10-cv-00528-LO-IDD<br>1:10-cv-01029-LO-JFA |

## COMPLAINT

Plaintiff Erik B. Cherdak[1] (hereinafter "Plaintiff" or "Cherdak"), *Pro Se*, and in and for his Complaint against NORDSTROM, INC. (hereinafter "NORDSTROM"), and states as follows:

### THE PARTIES

1. Plaintiff is an individual who resides in Gaithersburg, Maryland at the address listed in the caption of this Complaint.

2. Defendant NORDSTROM is publicly traded, WASHINGTON, USA corporation having a principal place of business as specified in the caption of this Complaint.

---

[1] Although Plaintiff Cherdak is not licensed to practice law in Virginia, he is a registered patent attorney before the U.S. Patent and Trademark Office.

## JURISDICTION AND VENUE

3. This is an action for Patent Infringement under the Laws of the United States of America and, in particular, under Title 35 United States Code (Patents – 35 USC § 1, *et seq.*). Accordingly, Jurisdiction and Venue are properly based under Sections 1338(a), 1391(b) and (c), and/or 1400(b) of Title 28 of the United States Code.

4. Defendant sells infringing lighted athletic shoes (a.k.a. "lighted shoes," "lighted sneakers," etc.) through its own retail stores including retail stores located in this judicial district and is therefore subject to this court's jurisdiction. For example, Defendant NORDSTROM owns and operates retail stores like and/or similar to one located in TYSONS CORNER CENTER, Tysons, Virginia, USA. Additionally, Defendant NORDSTROM operates a retail website at www.nordstrom.com which Defendant has made accessible to citizens of Virginia, USA, 24 hours per day, 7 days per week and 365 days per year.

## FACTS

5. On July 6, 1993, Plaintiff filed a patent application entitled "Athletic Shoe with Timing Device" that resulted in the issuance of U.S. Patent No. 5,343,445 (hereinafter, the "'445 patent") on August 30, 1994. The '445 patent is directed, *inter alia*, to lighted shoes like those sold by the Defendant. The '445 patents has successfully gone through additional expert review before the USPTO during reexamination proceedings related to the same (USPTO Reexamination Proceeding Control No.

...

90/008,269). Those reexamination proceedings resulted, *inter alia*, in the confirmation of many patent claims without amendment; many of said claims form the basis of the instant lawsuit. U.S. Patent No. 5,343,445 and its corresponding reexamination certificate have been previously provided to Defendant and Defendant has acknowledged its awareness of the same in the context of prior litigation between the parties. *See Cherdak v. Nordstrom, Inc.*, Case No. 1:10-cv-00528-LO-IDD (USDC E.D.Va.); and *Cherdak v. Nordstrom, Inc.*, Case No. 1:10-cv-01029-LO-JFA (USDC E.D.Va.). Both of those cases resulted in settlements arranged with Defendant's suppliers mandated and orchestrated *at least* in substantial part by Defendant.

6. The Defendant has in the past used, imported, distributed, sold and offered for sale, and continues to use, import, distribute, sell and offer for sale, infringing products such as those bearing the KENNETH COLE REACTION® brand trademark. ***EXEMPLARY*** infringing shoes sold by Defendant as late as February 28, 2011, include, **_but are not limited to_**, the KENNETH COLE REACTION® branded shoes known as the CHORUS MINE light-up sneaker. Printouts from Defendant's website (www.nordstrom.com) which depict said lighted athletic shoes are attached to this complaint at EXHIBITS 1 (silver) and 2 (pink).

7. *The infringing shoes mentioned in this COMPLAINT are merely **Exemplary** infringing shoes and, on information and belief, Defendant does sell, does offer for sale, and does distribute other shoes*

*now on store shelves (and which have been sold in the past) at least in this judicial district of Virginia (USA) and/or throughout the United States.* Accordingly, the particular shoe model(s) identified in paragraph number 6, *supra*, are merely exemplary and do not constitute a full and complete identification of all infringing shoes which are contemplated by this Complaint for Patent Infringement and the instant lawsuit commenced hereby – *Due discovery in this case will reveal all infringing shoes used, made, imported, offered for sale, and/or sold by the Defendant individually and/or collectively with other parties.*

8. DEFENDANT NORDSTROM IS HEREBY ADVISED THAT THE PLAINTIFF, THE INSTANT LAWSUIT AND THIS COMPLAINT DO NOT SEEK REMEDIES IN CONNECTION WITH ANY ACTS OF PATENT INFRINGEMENT BY DEFENDANT RELATED TO LIGHTED SHOE PRODUCTS WHICH ARE MANUFACTURED BY AND/OR WHICH ARE SOURCED TO (SUPPLIED TO) DEFEDANT FROM ANY OF THE FOLLOWING PARTIES:

COLLECTIVE BRANDS, INC. (/dba/ PAYLESS, INC.)
BBC INTERNATIONAL, INC.
STRIDE-RITE CORPORATION
ESO ORIGINALS, INC.
VIDA SHOES INTERNATIONAL, INC.
CHAMELEON, INC.
SKECHERS USA INC.
TARGET STORES, INC. (A.K.A. TARGET BRANDS, INC.)
THE WALT DISNEY COMPANY
ELAN-POLO, INC.
PUMA NORTH AMERICA, INC.
GEOX S.p.A.

## COUNT I – PATENT INFRINGEMENT

Paragraphs 1 through 8 are hereby incorporated by reference as though completely set forth herein.

9. Given the validity and corresponding enforceability of the '445 patent against past, present, and future infringing acts and other activities prohibited under the U.S. Patent Act (35 USC § 1, *et seq.*), Plaintiff Cherdak, *inter alia*, possesses the right to pursue claims in connection with the Defendant's past, present, and future design, use, manufacture, importation, sale, offer for sale, and distribution of infringing shoes under 35 USC § 271(a), (b), and (c).

10. On information and belief Defendant has infringed, contributed to the infringement of, and/or induced the infringement of the '445 patent in violation of 35 USC § 271(a), (b), and (c) by its design, use, manufacture, importation, distribution, sale, and offer for sale of shoes including, **but not limited to**, the shoes identified in paragraph 6 *supra*, and which are shown in EXHIBITS 1 and 2.

11. On information and belief, Defendant has infringed the '445 patent in violation of 35 USC § 271(b) by actively inducing distributors, customers, and/or other retailers to infringe the Cherdak patents. For example, Defendant has knowingly sold lighted shoes for infringing purposes. *See* EXHBITS 1 and 2, attached – Defendant stating that the shoes depicted therein "light up when she walks." *Id*

12. Such infringing acts on the part of Defendant have and continue to injure and damage Plaintiff. Accordingly, without the grant of adequate

5

remedies at law and in equity, Defendant will be permitted to willfully infringe the Cherdak patents to Plaintiff's further detriment.

## COUNT II – WILFUL PATENT INFRINGEMENT

Paragraphs 1 through 12 are hereby incorporated by reference as though completely set forth herein.

13. On May 21, 2010, Plaintiff filed suit in this Honorable Court seeking, *inter alia*, damages and injunctive relief for patent infringement of the patent in suit. *See Cherdak v. Nordstrom, Inc.*, Case No. 1:10-cv-00528-LO-IDD (USDC E.D.Va.). At the direction of Defendant Nordstrom, Defendant Nordstrom requested that Plaintiff seek out a resolution with one (1) of Defendant's suppliers, PUMA North America, Inc., with regard to exemplary lighted shoes sold by Defendant throughout its vast distribution channels.

14. Plaintiff and PUMA North America, Inc. did, in fact, reach an agreement contemplating sales of PUMA® branded products by Defendant and, accordingly, Plaintiff sought dismissal of said Case No. 1:10-cv-00528-LO-IDD, but did so in view of the express written *proviso* that "Plaintiff reserves the right to bring suit against Defendant Nordstrom, Inc. for acts of patent infringement in connection with products not sourced or supplied by PUMA North America, Inc." *See Id.* at Docket Entry No. 4 (Notice of Dismissal pursuant to Fed. R. Civ. P. Rule 41(a)). On information and belief, the exemplary infringing shoes specified in Paragraph 6 of this Complaint are NOT sourced by PUMA North America, Inc. The PUMA case is hereinafter referred to as "NORDSTROM I."

15. After Plaintiff filed his aforementioned Notice of Dismissal pursuant to Fed. R. Civ. P. Rule 41(a) as noted in paragraph 14 hereof, Plaintiff learned that Defendant Nordstrom was selling other, additional lighted shoe products which infringed the patent in suit. Shockingly, Defendant Nordstrom never requested or even enquired of Plaintiff about Defendant taking a license despite having full knowledge of the patent in suit and after instructing Plaintiff to work directly with its supplier, PUMA North America, Inc. to resolve certain outstanding issues in collateral litigation. Such other additional lighted shoes were/are sourced to Defendant from GEOX S.p.A. and were the subject of collateral litigation between the parties in the case captioned *Erik B. Cherdak v. Nordstrom, Inc.*, Case No. 1:10-cv-01029-LO-JFA (hereinafter referred to as "NORDSTROM II").

16. After Plaintiff sued Defendant for selling the lighted shoes contemplated in Paragraph 15, *supra*, (e.g., lighted shoes sourced by GEOX S.p.A. in NORDSTROM II), Defendant again merely instructed Plaintiff to deal with Defendant's supplier GEOX S.p.A. to resolve issues surrounding Defendant's additional unlawful sales of infringing shoes. And, all the while Defendant continued its marketing and selling acts in violation of the U.S. Patent Act. Plaintiff and GEOX S.p.A. resolved issues related to Defendant's unlawful and infringing sales and Plaintiff thereafter sought dismissal of the NORDSTROM II case.

17. Now, some three (3) months after NORDSTROM II was dismissed, Defendant is back at it again – Defendant Nordstrom has again deliberately, intentionally, and willfully chosen to infringe the Cherdak

patent in suit despite Defendant's actual and complete knowledge of the '445 patent -- simply because Defendant seeks greater profits without any regard for Plaintiff's valid and enforceable patent rights.

18. Defendant Nordstrom has had actual knowledge of the patents in suit since at least as early as May, 21, 2010, the date on which Case No. 1:10-cv-00528-LO-IDD was originally filed in this Honorable Court (NORDSTROM I). And, given the introduction of the exemplary shoes specified in Paragraph 6, hereof, Defendant has deliberately and willfully chosen again to ignore Plaintiff's valid patent rights simply to reap greater profits during the very-important Easter shopping season when parents flock to retail stores and websites to buy clothing and shoes for their children. On information and belief Defendant had full knowledge that it would be selling said exemplarily specified shoes in February, 2011, and despite the fact that Defendant knew that it had to obtain or otherwise arrange for rights to sell other infringing products *vis-à-vis* prior litigation between the parties.

19. Despite Defendant Nordstrom's actual knowledge of the patents in suit, Defendant Nordstrom has deliberately chosen to ignore the fact that the U.S. Patent Statute affords Plaintiff the right to seek a remedy against Defendant which may include an injunction preventing Defendant from using, making and *__selling__* infringing shoe products regardless of any indemnification agreement Defendant may have in place with third parties. And, regardless of any indemnification contract to which Defendant may

be a party, Defendant stands on its own when it comes to willful infringement.

20. To date, Defendant Nordstrom has not sought a license from Plaintiff despite the fact that Defendant Nordstrom demanded that PUMA North America, Inc. and GEOX S.p.A. step forward and negotiate settlements and licenses given Nordstrom's infringing acts related to sales of lighted shoe products which are not the subject of the instant litigation (hereinafter, "NORDSTROM III"). It is simply inconceivable that a company would not take the affirmative action to seek out license rights when that company has full knowledge of the patents in question and when that company had already demanded that third parties step up and take a license on Defendant's behalf. There can be no more clear a case of willful infringement than the instant case (NORDSTROM III).

21. Defendant Nordstrom's sale of lighted shoe products are acts of direct infringement of the patents in suit and have and continue to be done with wanton and reckless disregard for the valid patent rights of the plaintiff. Defendant has long known about the patents in suit, Defendant has been sued by Plaintiff in two (2) prior cases surrounding the patent in suit and for acts of patent infringement which are substantially identical to those raised herein, and Defendant demanded that its supplier settle claims raised in said prior litigation (*i.e.*, in NORDSTROM I and in NORDSTROM II) thereby clearly and boldly demonstrating Defendant's reasonable belief in the validity of Plaintiff's patents and claims of the types raised herein.

22. On information and belief Defendant has infringed, contributed to the infringement of, and/or induced the infringement of the '445 patent in violation of 35 USC § 271(a), (b), and (c) by its design, use, manufacture, importation, distribution, sale, and/or offer for sale of shoes including, **but not limited to**, the shoes identified in paragraph 6 *supra*.

23. On information and belief, Defendant has infringed the '445 patent in violation of 35 USC § 271(b) by actively inducing distributors, customers, and/or other retailers to infringe the Cherdak patents. For example, Defendant has knowingly sold lighted shoes for infringing purposes. *See* EXHBITS 1 & 2, attached.

24. Such infringing acts on the part of Defendant have and continue to injure and damage Plaintiff. Accordingly, without the grant of adequate remedies at law and/or in equity, Defendant will be permitted to willfully infringe the '445 patent to Plaintiff's further detriment.

## PRAYER FOR RELIEF

**WHEREFORE**, Plaintiff Cherdak prays for judgment and relief against the Defendant as follows:

A. That permanent injunctions be issued against continued infringement of the '445 patent by Defendant and its parents, subsidiaries, officers, directors, employees, affiliates, representatives and agents, and all those acting in concert with or through Defendant, directly or indirectly, including, but not limited to, distributors, customers, and other retailers;

B. That an accounting be had for damages caused to Plaintiff Cherdak by Defendant's acts in violation of the U.S. Patent Act (35 USC § 1, *et seq*.) together with pre-judgment and post-judgment interest;

C.     That damages be awarded in accordance with the U.S. Patent Act, 35 USC § 1, *et seq.*;

D.     That any damages awarded in accordance with any prayer for relief be enhanced and, in particular, ***trebled*** in accordance with the U.S. Patent Act (35 USC § 1, *et seq.*) for Defendant's acts which are found to be willful acts of patent infringement; and

E.     Such other and further relief as this Court shall deem just and proper.

## DEMAND FOR TRIAL BY JURY

The Plaintiff hereby demands a TRIAL BY JURY on all issues so trialable.

Respectfully submitted,

*[signature]*

Erik B. Cherdak, Plaintiff *Pro Se*
149 Thurgood Street
Gaithersburg, Maryland 20878
(202) 330-1994
Fax 1.240.235.7128
Email: efunds@yahoo.com

February 28, 2011